Good morning, Your Honor. May it please the Court, my name is Tom Gesselbrock. With me today at council table is Cori Borgeson. Together we represent Polar Star Alaska Housing Corporation, the defendant Appellant in this case. I will be arguing. I'd like to reserve three minutes for rebuttal if possible. All right. Thank you. Your Honors, the Fifth Amendment requires reversal of the district court judgment. Judge Beislein made erroneous rulings on predicate lease issues and on jurisdiction, and he should be reversed on those issues. But the Fifth Amendment requires that when the United States government files an eminent domain suit and a declaration of taking and takes all right, title, and interest in a defendant's property, it must pay just compensation. Counsel, let me ask a couple of particular questions because the case is very complicated. I want to make sure that I don't have it mixed up in my mind. Yes, Your Honor. There are two leases. The government issues lease as landlord leases the bare ground to the Cool Homes Project. The raw dirt, that's correct. Then the Cool Homes Project builds the buildings without basements or foundations such that they can't be moved with a project lease back to the government for 20 years. That's correct. The ground lease is 23 years. That's a subject of some dispute. Well, it looked like a scrivener's error. Actually, it looked to me like the judge was right. They must have meant 23 years on the ground lease and 20 on the project lease. I have to disagree with you on that. I realize you have an argument that they didn't because they were able to build faster. Right. But assuming that they did, what it looks like is the government was, well, maybe not too competent toward the end of the 20 years. So first, when they can't reach agreement on the rent, they condemn a leasehold. That's correct. But they've already sent a letter renewing the lease, which they had a right to do under the 20-year project lease. Attempting to renew the lease but refusing to take part in the method for determining the renewal rent provided in the lease. They still renewed it, and under Alaska law, if there's a sufficiently clear way to determine what the rent is on the renewal, it's a binding contract. Unless, of course, they refuse to follow that procedure, which is the case here. Well, doesn't that just mean that the landlord, which is Cool Homes Project in this case, gets to go to court and get an injunction making them follow the procedure? No, Your Honor. The analogy that I believe is accurate is that of a gun. When they sent their statement of intent to exercise the option, they pulled the trigger. But by failing to engage in the required precondition of effectiveness of the renewal, which was to renegotiate a rent, and by refusing to follow the procedure for doing so, in fact denying that the applicable procedure applied, what is now considered to be a mistake in the government's brief. They pulled the trigger, but the gun misfired. And, in fact, there was never any applicable and effective extension of the project lease. Do you have authority for that? That sounds wrong to me. It sounds like suppose you didn't have an argument about the term. The deal is the tenant can renew year to year and pays X dollars as rent. And the tenant renews and says, but I don't have to pay X dollars in rent. Well, that doesn't mean you can treat the tenant as not having renewed. It just means you're entitled to the rent, and you're also entitled to terminate the lease if that's the terms of the lease. Kelly v. United States Judge is the closest authority. It's cited in our brief. And in that case, like this, there was a procedure for determining the price term in a contract. It was not followed. Ironically, in Kelly, not because of any fault of the party, where our position is it's the fault of the United States here, but it was the fault of the third-party appraiser. Nevertheless, the court said in Kelly that because the procedure was not filed, the exercise of the option was not effective. That's a court of federal claims case. We've cited it in our brief. There's been no real distinction made. Incidentally, it was really confusing going through the record and trying to figure out which papers I should be reading. You've got multiple provisions on what the renewal rent should be. There's something about some term I never saw before, 10 percent of the equity investment or something. Article 5 of the project lease. In other terms, one appraiser that you both agree on, and another term will negotiate it at multiple terms, and I don't know which one is the one that was ultimately the deal. It's pretty straightforward, Judge. Article 5, as originally drafted, said that the parties must renegotiate renewal rent, renewal rent not to exceed 10 percent of the remaining equity investment. But there was no provision. What is remaining equity investment? I never saw the term. Let me come back to that in just a half a second, Your Honor, because that, again, confusion in this case. Subsequently, as a result of a desire to get financing, the parties modified Article 5. Again, the parties must renegotiate renewal rent. Again, it must be based on 10 percent of the remaining equity investment as determined by an appraiser to be agreed upon by both parties. So that method was adopted pursuant to an amendment of the project lease. And is that the deal that was in effect at the time? Yes, Your Honor. Now, what is remaining equity investment? In the course of the negotiations here in the months before the condemnation suit was filed, Polar Star proposed that, in fact, the appraisal process be followed. The government declined. You're not answering my question. I am right now. It's not a term of art that's commonly used. Gosh, I litigated a fair amount of commercial landlord-tenant, and I never saw it. What does it mean? The government declined and said that it meant the remaining balance on the mortgage. They have now admitted that that was a mistake. Judge Beislein ruled correctly in this case that the remaining equity investment meant the net value minus any debt on the property. There was no debt on the property. And, therefore, the 10 percent cap, 10 percent of remaining equity investment, meant 10 percent of the fair market value of the property. So is that in dispute now? I don't believe that's in dispute. So what's basically in dispute, though, is whether that had to have been decided in order to exercise the lease option. That's correct, Your Honor. So we've taken out of the, even though the parties probably could have been clearer at some point, they basically came to repose on that particular part of it. But what you don't agree on is whether the number had to be reached to exercise it or whether they could exercise it. And we only came to agreement here on appeal. In the district court, the government said, no, that appraisal process didn't apply at all. Well, would your argument be stronger if there was nothing in the lease talking about how to calculate rent down the way? Yes, probably. And that goes to the whole question of the majority position versus the minority position where there's a missing price term. Because here, whether it was good or bad, there was something there. Correct. And we know that we're talking 23 years, or I know that there's some discussion about that, whether people can do math or not. But still, there was something there as opposed to nothing. And so you're somewhere between there, right? I'm sorry, Your Honor? You're between there. I mean, if there was nothing there, then you wouldn't have a very good argument. Well, I don't know about that. Certainly the facts are that Polar Star proposed to proceed with the appraisal process, and the government refused. I'm sorry. Judge Fletcher, you had... Okay. So, you know, on that basis, we believe, based on Kelly, Your Honor, that the case law is quite clear that regardless of theoretical suggestions about what might happen on a missing term, under these circumstances, the government simply could not proceed with the position that, in fact, the project lease had been extended. It pulled the trigger, but the gun never fired. But it sort of seems like what you're saying, why should the option have to specify the dollar amount of rent 20 years or more in the future in order to be enforceable? It seems like that's what you're asking us to do. No, I don't. I'm not, Your Honor. The contract could have specified what the price term would be, or it could alternatively specify a process for determining the price term. But to simply leave it up in the air, that's the lacking of the definite fixed price term, which is the most essential element of any contract, that black-letter contract law says we don't have a contract if we don't have a meeting of the minds on the price. In addition, even if you were to adopt the minority position and say, well, there's some kind of an implicit agreement on a reasonable rent, then the necessary corollary of that position is for the district judge to determine what that rent would be. And, in fact, at first, Judge Beislein said that he would do so. Your use of the majority and the minority is a little bit, how are you using those words? I'm using it as it was quoted in- Is the majority the ones that you like and the minority is the one that the government likes, or is it really majority and minority like we usually-I mean, we look to controlling authority. The reason I'm using those terms is because that was what was used in, I believe it's the Culinari case, and I believe also the Mapes case, which are cited by the government. In each of those cases, the district judges referred to the position that Judge Beislein eventually adopted as the minority position. I'm having some trouble following the citations. The Kelly case is a court of claims case- Correct. Where an option to purchase was not properly exercised. Correct. I would think that Alaska law would control because it's a contract in Alaska. Is that true? No, federal law controls on the project lease issue. Both parties agree in that regard. So Altman doesn't matter? I think Altman has some possible persuasive authority, as do the other state court cases, but no, federal law controls on this issue. Altman takes the usual position that a renewal term that specifies a reasonably ascertainable means of determining the renewal rent is a binding contract provision, even though it doesn't say a figure. And most states do the same thing, because if you've got a long-term lease, it's impossible to know what a fair rent will be 20 years out, so there's just a procedure in the lease. Understood. And again, this is a case in which the government refused to follow the procedure, and therefore, in our position, could not argue in the predicate lease ruling prior to- If you're right on that- Yes. Then there was no renewal. That's correct. And if there was no renewal, what there was was a taking. That's correct. There was a taking in any event. Well, not if all the papers were just a result of incompetence, because they'd renewed it and didn't realize they'd renewed it. I disagree, Your Honor, and let me tell you why. Under the Declaration of Takings Act, the statute says that when you file a declaration of taking and, in fact, you deposit funds, which happened here, then a taking occurs and title vests. On that date, in early August of 2006- Is that a case about where taking is unnecessary because the government already owns it, or is that a case where the purpose is to determine the date for valuation? That's the statute, and I've cited that in my reply brief. You cited a case. That's what I was asking about. Well, the cases that are cited by the government- The short answer is I don't have a case to cite to you in that regard. The cases that are cited by the government- That was just a case of evaluation. You look at that date. Right. The cases cited by the government do not involve the filing of a declaration of taking, and that's why San Geronimo, 422,000 square feet, 93.7 acres, those are off point. Because in those cases, the government proceeded in the alternative. We're filing a complaint for condemnation. There's a dispute about an underlying issue of property law. Please determine the issue of property law. If you determine it adverse to the government, we're going to proceed with the taking. But aren't they really just- In the eminent domain, there are cases that say that the government can then quit claim title in eminent domain. And you cite some cases that have to do with another statute or something that's not eminent domain in the government. No, no, Your Honor. It's the Declaration of Takings Act. That is the eminent domain act that's applicable to the government. And in fact, remember also, Judge, that all of this is hindsight. This is all hindsight by the government after the fact. The complaint says nothing about an extension of rent. It says nothing about quieting title. The Declaration of Takings says nothing about that. All of this was made up by the government as a litigation strategy in late 2006 after it had notified Congress that indeed it was proposing to take all of Polar Star's interest in the property. So this is not a situation, much as the government's brief would have you believe, this is not a situation where the government went in carefully with mutual alternative theories. That's all litigation strategy after the fact. Well, yeah, maybe to use the gun analogy, they were the gang that couldn't shoot straight until they figured out that did some math. But still, if they did in fact renew it, it does put it in a different capacity. Now, I know that you argue about that. But it's my understanding that Judge Beislein did that by way of a motion in limity, right? Essentially, that's correct, Your Honor. And so we review that for clear error because he had to make some. It's not like it was a summary judgment or a 12B or something along those lines. I think it's a de novo review because issues of lease interpretation are reviewed de novo. Well, except for he determined that it was a clerical error, hearing everything that everyone had to say and listening. So it wasn't just clearly. . . The fact that it was in the posture of a motion in limity, I think that there's a good. . . I mean, there's a strong argument to be made that it's ruled for clear error. And in order to reform a contract, as we've argued, because there was mistake or an error, that requires clear evidence. This did not meet that standard under any circumstances. And so your review should be, I believe, if that's the approach you're going to take, whether in fact that clear error standard was met. Our position is it was not. Even if it was, reformation is not available either in aid of the drafter, number one, or against a third party, which is Polar Star in this case because they were not the original developer or party to the contract. Let me skip over to something that's a little further down the line, logically. You, quite understandably, did not ask the District Court to transfer the case to the Court of Claims because your position is it's a condemnation, and in a condemnation case, you get your money in the District Court. That's correct. And that's right. Let's say you lose on all this, and let's say the panel agrees with the District Judge that it's not really a condemnation case. It's a rent dispute. Will you still be timely if you then file in the Court of Claims, or do you need a transfer? We would probably need a transfer, would be my guess, just to be safe. The government has already, and this is not in the record, the government has already issued a decision by the contracting officer, kind of sua sponte, claiming that Polar Star had not properly raised some questions. I don't know that there's a rent dispute, Your Honor, because no rent has ever been determined, so we don't have a breach of contract action against the government for not paying rent because nobody knows what the rent is. You would go to the Court of Claims and say we're actually not entitled to any money. I thought you wanted money for rent, which would be due had the contract term for setting rent been followed, plus consequential damages because they let the buildings freeze up and get destroyed. Instead of terminating the lease in the summer so you could move your buildings, they pulled out in the middle of the winter when in Fairbanks you can't do a thing. In the broadest context, that's correct, Your Honor. I thought you'd want rent plus consequential damages. In the broadest context, that is correct. And, in fact, we actually proposed a pleading to Judge Beislein exactly along those lines. He never actually ruled on it one way or the other because he seized on the jurisdictional issue, the sovereign immunity issue. But as the case stands right now, what Polar Star seeks is just compensation. That's not a claim against the government. Therefore, sovereign immunity is not involved at all. I see that my time is short. I'd like to reserve some if possible, Your Honors.  Thank you, Your Honor. Good morning. Good morning, Your Honors. May it please the Court, John Smeltzer for the United States. So that the government can't do math. No one can do math here. Well, nobody did the math on this one, Your Honor, because nobody noticed the dispute discrepancy in the ground lease until this end-of-game issue about the project lease arose. But let me just start by saying I think there are three issues that the Court needs to look at. First, was the project lease renewed? We think the district court properly held the project lease was renewed. And then, secondly, if the project lease was renewed, does that mean that there was no taking, we believe? I agree, incidentally, that the rent term that the parties finally agreed upon was a rent that would not exceed 10 percent of the remaining equity investment. And I can't remember exactly which appraisal process. Yes, we agree on the point that the lease was modified. Okay, what is the term for renewal? What was the deal? The modification said that it would be 10 percent of the fair market value as determined by a third-party appraiser, determined collectively by the parties. And that was a modification to the lease. The original lease language is the language Your Honor spoke to. So you get an appraiser to figure out the fair market value of the property in 20 years after it was built, 20-year-old buildings, and you figure you've got 10 years left on them, you pay fair rental value of one-tenth of what the buildings are worth. I'm not sure about the rationale, but in terms of the lease term, that is correct. And I'll come back to that in a minute. Okay, is this an equity investment thing? That's all gone then, the remaining equity investment? It was modified out of the lease. That's correct. But it matters, Your Honor, I would submit, because at the time that the United States exercised its option Could you tell me where to look in the record? Because we're now in a situation where we can't even reach agreement on what paper to look at to determine how to construe it. Right, Your Honor. Our brief steps through the process of what the original ground lease says, and then it discusses the modifications, and the citation for the modified lease is in the record, or in our brief. Look at the red brief for the site to what you think the document is. We both agree that there was a modification, Your Honor. Did the district court ever resolve exactly what document we're supposed to read? The district court determined that that would be the proper standard. If you look at the district court's last ruling on this, the district court I'm trying to figure out what to read. At the end, the district court found that both standards meant the same thing. You had said that equity investment is a strange term, that nobody understands what it means. And the district court, in the end, determined that it means the same thing as what the parties came to modify the lease to say. What makes this relevant is the United States originally thought that term meant something different. It meant this, what Mr. Gesselbrecht said, it meant 10% of the remaining balance on the mortgage. And after the United States exercised its option, it Even though they wrote it in the contract, they had no idea what it meant either. What happened was, Your Honor, and you can look at the correspondence back and forth, is after the government exercised its option, then it came time for the parties to get together and figure out what the rental would be. And the United States was citing to the old, pre-modified lease. And if you look in the file, the complete lease still has the old language in it. They didn't redo the whole lease. There's just a separate document in the file saying, insert this. And what appears to have happened is the government looked to the whole lease and was just continuing to refer to the old term. So when Mr. Gesselbrecht says the government refused to follow the process, that's not quite correct. What the government did was look to the lease, follow the term it believed to be controlling, and it said specifically in its correspondence, we see you citing a different standard. We don't quite understand where that different standard comes from. And there was this confusion that went back and forth, and we acknowledge that. It wasn't the government's fault. It wasn't a refusal to follow the lease term, is the point. So anyway, the three issues the court needs to address is, was the lease renewed? Look, is the fact that the government occupied for five months after the 20-year term was over, didn't pay a nickel of rent for it, left the buildings in the middle of the winter in Fairbanks where they'd be subject to being destroyed by the weather? No. I mean, there's a lot that happens in the middle. What the government did is exercise its option and offer amount to pay on that. There was a dispute as to what that should be. So because there was a dispute, the government went ahead and filed the suit in eminent domain to ensure that continued possession through that period. But when you filed the suit, you didn't know that you had renewed, right? We believed we had renewed, Your Honor. There was a dispute as to whether there needed to be a determination of the renewal rent. So what is your response to Polar Star's argument that a quiet title action is not available to determine the interest in a leasehold? They're wrong. Well, could you be more legal about it? Sure. The cases, including the Supreme Court cases, say that you can determine matters that occur in a lease when they go to title questions. The leading case from the Supreme Court is the 93.97 acres case. It was a case not about a lease renewal but about a lease revocation. The United States revoked a lease under a clause that said the United States could enter and revoke under war emergencies. So we revoked the lease. The United States did in that circumstance revoke the lease and asked the owner to, you know, we need to take possession now. The owner disagreed as to whether the revocation was proper, so then the government condemned the land and in the condemnation suit litigated the lease question. Was the lease properly revoked? And the Supreme Court said you can do that. Government doesn't have to lose its right to immediate possession, doesn't have to elect remedies when it brings a suit in condemnation. They can proceed in condemnation to get immediate possession, and they can continue to litigate their title claim. Have you paid rent or any amount of money, whatever you call it, for the five months of government occupancy after the 20-year lease ended? Your Honor, once we condemned, we filed an estimate. You filed, but I thought you got your money back. The just compensation amount hasn't been returned, Your Honor. Where is the money now? Is it in the clerk's office? No, it was paid out. It was paid out to the Cool Homes Project? That's correct, Your Honor. So that was, what, the $75,000 or something like that? Yes, Your Honor. There was an order that it should be paid back, but, of course, the case is on appeal. Okay, so what they've got is $75,000. That's correct, Your Honor. And is it true that the buildings were vacated in the middle of the winter by the government? Your Honor, the United States stopped maintaining, I believe it was sometime in late 2008, but that was after, in early 2007, the government continually asking Polestar, do you want to come and get these homes? Are you going to remove your homes? And we continually worked with them and paid the, maintained the utilities, kept the heat and the electric on all the way through for a year and a half, more than a year and a half, after all the troops had left these homes, in order to maintain them for Polestar if Polestar wanted these homes. And they never came in and never followed through on our inquiries. So it's more complicated than that. Ultimately, yes, the government stopped maintaining them, and ultimately the government raised them. And the government now has a claim against Polestar for that, because the ground lease provides that if we don't want the homes, it's their obligation to remove them, and they didn't. So those issues are complicated. They weren't fully resolved because they are all ultimately issues arising under the lease relationships between the parties. And what the court here ultimately determined was because this one issue, this one lease issue about title, the right to possess the land, was necessary to address in order to determine whether a taking had occurred. And again, the taking named only a five-month leasehold. When you say you maintained them for a year and a half, I don't know if that's after the troops moved out, which is irrelevant to Polestar, or if it's after the ground lease ended, or if it's after the project lease ended. The troops moved out in late 2006. They don't care. Right. Well, if the lease was, the project lease was renewed, as we say, it was renewed through mid-2007, and the ground lease ended in January 2008 on a 23-year ground lease. It ended in the summer of 2008. I believe it was January 2008. Yeah, I think it was January 2008. The project lease was on the August-to-August schedule. Let's say it's just as Judge Beislein said, 20-year project lease, one-year renewal. When would that renewal end? In the middle of 2007. Summer of 2007. That's correct. And the ground lease would run until January 2008? That's correct. But the key point here, Your Honor, is the government When did you maintain the buildings to? My understanding is at least through September of 2008. There's a notice in the record in September of 2008 that at that point the government would stop maintaining. But the critical thing, the reason why it matters when the troops moved out, Your Honor, is because beginning in early 2007, the government began talking with Polar Star about when are you going to come remove your homes,  The government didn't have to occupy on the project lease all the way through mid-2007, and they didn't. And they said you can come in beginning in April 2007 to remove these homes, and Polar Star didn't. I don't see why that matters. As I recall the leases, what they said was that on the ground lease,  and if it doesn't, they become the property of the government. That's true, Your Honor, but those are all at the option of the United States, and that clause the court is referring to begins with unless the government agrees otherwise. So even if at the end of the ground lease the government is free to allow the property owner to come in and remove their homes, so even if the ground lease expired in January 2007, the government was free to agree to allow them to come in, and the record is clear that that's exactly what the government did. I want to come back to some of the points on lease renewal that were made on this one. Mr. Gesselbrecht, so we can get you out on those. Was that in the determination of whether they could, on the date, on the term, was that a motion in limine, as I had discussed with appellant's counsel? I'm sorry, Your Honor. Well, when determining the expiration date, counting, doing the math, that what Judge Beislein once said that, okay, it was a clerical error. Was that a motion in limine where that was determined? It was determined on a motion for judgment on that issue, and yes. But was it a motion in limine? Your Honor, I'm not sure how it was styled. It was before trial. It wasn't trial and condemnation. Is it? It was in limine if it was before trial. It was to be a bench trial, Your Honor. I think that's called an in limine motion for people that do trials. Thank you. Do we review it for clear error? Do we review it de novo? I think the lease interpretation, they're correct that it's reviewed de novo. But we also think it's clear that, as Judge Kleinfeld was saying earlier, that this wasn't a complicated issue on the 23 years. From the beginning, it was understood this would be a 23-year ground lease, and there was no reason that Polestar would have wanted anything less until the very end. But the judge listened to extrinsic evidence and determined it to be a clerical error. The judge heard some evidence on that, right? The judge took extrinsic evidence in the sense of contract interpretation.  We advised the court this was a de novo lease. All right. If you want it de novo. And we believe that's the standard that applies. We also believe it's clear that the lease was a 23-year lease, and we believe that's what Polestar would be arguing at year 5, year 10, or year 15 if that discrepancy had been brought to them at any of those times because, of course, it gave them more time on the ground on the Air Force Base. And that is not to their disadvantage. But, ultimately, the – Adequate time to build the place and also to remove the buildings in the summer instead of the winter, isn't it? I mean, that's the way it looks to me. Well, here, ultimately, that's the way it worked out. The longer lease would give them more time to work with it. Also, it was to make sure they had enough time to build them before – Originally, that's what it was only about, Your Honor. Originally, the project – They're going to build the buildings and then lease them to the government for 20 years. The ground lease to them has to be longer than 20 years so that they have time to build the buildings. Well, that's what's unusual about this record, Your Honor. The project lease and the ground lease initially were – When they were written, presumably, were going to expire at the same time. That makes no sense at all. I mean, this may be unusual for the government, but it's not unusual for private developers to have a lease and lease back where one party has more access to capital than the other, and occasionally municipalities do it where they don't want to put out a bond issue, so they build a building by leasing the ground to somebody who builds the courthouse or whatever and leases it back. And that's what this looks like, just a routine – That's correct, Your Honor. – deal like that, and the ground lease has to be longer in order to allow time for the construction. Well, Your Honor, that's not the way that – Originally, it was presumed that it would take three years, and if you look at the ground lease, the ground lease says you have to deliver within three years the project lease. The only thing that I thought was funny was it says leases to the party of the second part, lessee, for a term of 23 years beginning 7 January 1985 and ending 6 January 2007. I assume the government wrote it because it uses the military form of dates instead of the – The date is wrong, Your Honor. And then I subtracted 1985 from 2007 and got 22. Right. It's a 23-year lease, but ultimately it doesn't matter, Your Honor. It doesn't matter to any of the issues before the court. The lease was renewed, the project lease was renewed, through the same period of time that the renewal or the taking would have occurred. So because there was a renewal of the project lease, the amount of time in the ground lease is really immaterial. Well, why, since you keep saying that the lease was renewed, why shouldn't the district court have made a ruling that the rent was part of the determination of whether there was a renewal? That's obviously the position of Polar Star. Because determining the rent was not a precondition to determining whether there was a renewal. And this began as an eminent domain case, and the only issue before the court in eminent domain was whether – who had title. And when you file a declaration of taking, you don't concede who has title. You file a declaration of taking, and then you say this person claims an interest. We filed the declaration of taking. We said Polar Star claims an interest. We asked the court to find that the interest was actually ours because we had renewed the lease. The court found it was ours, and therefore there wasn't any need to pay compensation. And in terms of the question of ancillary jurisdiction, then, is the sovereign immunity is the framework that governs this, and you don't have counterclaims against the government under the theory of ancillary jurisdiction unless there's a waiver. And there is no waiver for the claim that they want to bring with respect to whether it's a declaratory judgment action or a claim for the actual money on the lease. There's not a waiver for that in this context. The only thing that the district court had to decide on that issue was the issue of possession. Did the government have the right to be there? Once that was decided, that was all he had jurisdiction to do on the government's complaint in eminent domain. I want to come to Judge Kleinfeld's questions about the Kelly case and the Altman case because they provide the proper framework for determining whether the lease was renewed. Kelly is inapplicable. Kelly is inapplicable because if you look at the specific language of the lease involved in Kelly, is it specifically required the appraised value to be fixed at least 70 days prior to the termination of the lease term than in effect. It was a lease that specifically made determination of the rental amount a precondition to exercising the option. That is not what this case had. This case is exactly like the Altman case. In the Altman case, there's a term that said if you want to renew, you have to do it within a certain number of days. We did it within that number of days. In the Altman case, there was a term that said you've got to then renegotiate. Same as the term here. In the Altman case, it said that the renegotiated term would be determined by appraisal. What the Alaska court determined was that the redetermination by appraisal was not a precondition, and it wasn't done in Altman. They didn't get the appraisal. Same thing that happened here. But it was a term that could be determined after the fact. It was a definite way of determining rent, so it wasn't a precondition. And the distinction is, is something required under the lease as a way of determining rent versus is it required as a precondition of exercising an option? And we submit that it was not required as a predetermination of the exercise of this option. If it was, it would have rendered all of the language on the maximum term and the appraised value meaningless. None of that would make any sense. And if you're going to interpret the lease by its plain terms, you have to give those terms some meaning. I'm running out on my time, Your Honor. I've got 17 seconds left, so I want to answer whatever question. Apparently there are no further questions. Thank you. Thank you. Briefly, Your Honors, Judge Kleinfeld, excerpt of the record, page 658, is the proper Article V. The language is clearly a precondition. Quote, the rent for such subsequent periods must be renegotiated based upon the remaining equity investment. And then it goes on with respect to the appraisal points. How does that language make it a precondition? The language of must, Your Honor. This is not like Altman with a specific time period, but the imperative must makes it a precondition. You asked when the- I don't understand. It doesn't say that it's a precondition. It just says- It just says must. Must be renegotiated based upon the remaining equity investment. Negotiated rent shall not exceed 10 percent of the fair market value of the improvements. So you disagree with the government on what- I do. Paper to look at for the deal. You think it is this- No, this is the paper. I think we all agree this is the modification of Article V, ER 658. And it doesn't say that the option to renew shall be exercised after determination of rent, which must be renegotiated on this basis. It is not phrased that way. That's correct. However, the way I read this, we have a basic disagreement. This is a precondition to effectiveness. With respect- I guess my professor said there's no such thing as a condition subsequent. And that's basically your position. Yes, Your Honor. With respect to the question of the units themselves, the government emptied out- About a minute. Well, you're in overtime. I'll give you one more minute to wrap up. The government emptied out the military families by December 28th. Thereafter, their maintenance, so to speak, resulted in extensive destruction of the units. The status of the units is in the record on Docket 120, Exhibit J. I have to spend a few seconds of time on the question of the ground lease. It ended in 2007, 6 January 2007. In addition to all the arguments in our brief, the admissions by the government to Congress, to the court, by the counsel in this case, make it clear. Was there extrinsic evidence, Your Honor? Yes. That's the extrinsic evidence. It did not support Judge Beislein's ruling. And so we believe that's the case. Finally, I would just say, as this court said, cut a condemnation case into slices and it bleeds. That's what happened here. If you look at each individual issue, you miss the bigger point. The bigger perspective is Polar Star walked into an eminent domain case owning 300 units of military family housing. It walked out owning nothing, and it got not a single nickel. That's a violation of the Fifth Amendment. We ask that the case be reversed and remanded for a proper determination and payment of just compensation. Thank you. Thank you both for your argument. This matter will stand submitted.
judges: B Fletcher, Kleinfeld, Callahan, Cjj